SOMMERVILLE, J.
Defendant was convicted of retailing “intoxicating liquors without previously obtaining a license therefor from the police jury of the parish of Caddo, and the municipal authorities of the city of Shreveport.”
Defendant and: appellant relies upon nine bills of exceptions for a reversal of the judgment and sentence.
The statute under which the defendant was prosecuted is known as Act No. 66 of 1902, p. 93, and is entitled:
“An act to amend and re-enact section 910 of the Revised Statutes of the state of Louisiana of 1870 as amended and re-enacted by Act No. 83 of 1886, approved July 8, 1886.”
Defendant charges that/‘the indictment under which he was convicted did not charge him with any crime known to the laws of the state of Louisiana, and that Act No. 66 of 1902, under which he was convicted, was unconstitutional, null, and void, and violative of the thirteenth amendment of the Constitution of the United States,” in that it provides that, on conviction for selling liquors without having previously obtained a license, the offending party shall be fined, “and in default of payment of the fine and costs shall be imprisoned for a term within the discretion of the court.” He argues that the term, of imprisonment fixed in the statute “in default of payment of fine and costs” violates article 13 of the Constitution, which provides that:
“Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.”
The province and scope of the thirteenth amendment was simply to abolish slavery in the United States. Under it the Congress has only to do with slavery and its incidents. And the act of Congress of 1866, passed in view of the thirteenth amendment, only undertook to remove certain burdens and disabilities, the necessary incidents of slavery, and to secure to all citizens of every race and color, and without regard to previous servi *55 tude, those fundamental rights which are the essence of civil freedom, namely, the same right to make and enforce contracts, to sue, be parties, give evidence, and to inherit, purchase, lease, sell, and convey property as is enjoyed by white citizens. Thereunder the Congress may enact laws to protect the people of the colored race against the deprivation, because of their race, of any civil rights granted to other freemen in the states of the Union. Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. S35.
The amendment, by its terms, excepted the infliction of punishment for crime from its scope; and the state of Louisiana had authority under that exception to provide in Act No. 66 of 1902 that one who violates the terms of that act shall be fined, and, in default of payment of the fine and costs of court, shall be imprisoned. The laws of Louisiana have always provided that persons convicted of crime shall pay costs of prosecution, whether it was so stated in the sentences or not, R. S. 979. Similar statutes relative to fines and costs are in force in the United States government. U. S. R. S. §§ 974, 1041, and 1042 (Comp. St. 1913, §§ 1615, 1705, 1706).
Article 238, Code of (Practice, which provides that:
“No debtor can hereafter be arrested and held to surety, all laws to the contrary notwithstanding', except in the cases above provided”
• — has reference to civil processes; and it has no application to criminal proceedings.
[5] Pines and costs of court in criminal proceedings are not generally recognized as debts; they are allowances or legal charges authorized by statute. Parker v. Robertson, 14 La. Ann. 249; 2 Words and Phrases, 1872; 4 Id. 3447. This court has held, in the case of State v. Chapman, 38 La. Ann. 348, that the costs of court do not form part of the fine imposed, so as to give appellate jurisdiction to this court. But the payment of costs of court by a convicted person forms part, of the sentence, even if it does not form part of the fine imposed, and the state has a clear-right to impose the payment of costs in addition to a fine for the violation of one of its-statutes.
[1] But the question is not a serious one in this case, for the reason that the record does not show what, if any, costs were incurred. Article 120 of the Constitution provides that sheriffs shall receive compensation from their respective parishes in criminal matters for the services therein enumerated;- and article 122 provides that clerks of court shall receive no compensation from the state or parish for their services in criminal matters. And the general fee hill (Act No. 203 of 1898, p. 485) does not appear to fix any fees for clerks of court in qriminal cases; and, with reference to sheriff’s fees^ it says that the fees therein fixed shall be-paid by the parish, except “for receiving in and discharging from the parish prison, one-dollar shall be allowed, to be paid by the prisoner only”; and, further, as section 12' of the act provides “that all other laws-(not embraced in this act) on the same subject-matter be and the same are hereby repealed,” the court cannot determine the amount of costs which -may be imposed, or which the defendant in this case would have to pay, if any were demanded from him. It is unnecessary to pass upon this-point in the case. The act under consideration is not violative of the thirteenth amendment to the Constitution of the United States.
The points raised in the other bills of exceptions have been recently passed upon by this court in the following cases:
In the case of State v. Brown, 41 La. Ann. 771, 6 South. 638, and State v. Boulanger, 134 La. 13, 63 South. 607, we held the -in-formations to be good which charged the defendants there with retailing intoxicating: liquors without having previously obtained li *57 •censes to do so, without referring to the police jury or the municipal authorities. The -statutory offense consists in the keeping of .a shop for the purpose of illegally selling intoxicating liquors, or of retailing liquors illegally. 2 McClain on Crim. Law, §§ 1229, 1270. • And this information, having negatived the fact that defendant had obtained licenses from both parish and municipal authorities, sufficiently charged that he had not obtained a license from either.
[2] The statute is, in part:
“Whoever shall keep a grog or tippling shop, or retail spirituous or intoxicating liquors without previously obtaining a license from the police jury, town or city authorities, on conviction .shall be fined,” etc.
In the case of State v. Kuhn, 24 La. Ann. 474, we hold the indictment to be valid which charged the defendant there with retailing liquor without having previously obtained a license therefor “from any town or city authority,” etc.; and in State v. Jackson, 135 La. 365, 65 South. 491, the conviction was sustained where the alternative “or” was used in the information.
[3] In State v. Brown, 41 La. Ann. 771, 6 South. 638, State v. Selsor, 127 La. 513, 53 South. 737, State v. John, 129 La. 208, 55 South. 766, State v. Moeling, 129 La. 204, 55 South. 764, and State v. Jackson, 135 La. 4365, 65 South. 491, it was held that the name of the person who purchased the liquors from the defendant, and the witnesses to the purchase, were not necessary to be given, as they did not form ingredients of the crime charged.. See, also, 2 Cyc. 223; 2 MeClain on Crim. Law, § 1249. The objection was properly overruled.
[4] 'Several bills of exceptions were reserved to the ruling of the court in rejecting certain evidence sought by the defendant •on cross-examination of the prosecuting witness, going to show that he was a fugitive from justice.' He was asked:
“Q. Is it not a fact that you are now being held because of a warrant issued in the state of Mississippi charging you with murder committed in that state?”
And again:
“Q. Were you not accused of murder committed in the state of Mississippi and arrested on the streets of the city of Shreveport?”
—and several similar questions. Under the ruling of this court in State v. Barnes, 136 La. 512, 67 South. 349, which decision was rendered since the trial of the case now under consideration, the witness should have been permitted to answer the questions propounded. It is held in the last-cited case that: For the purpose of discrediting a state witness who is a stranger in the community, defendant’s counsel may, on cross-examination, ask him if there is a charge of murder pending against him in another state from which he has fled. See, also, State v. Southern, 48 La. Ann. 629, 19 South. 668; State v. Callian, 109 La. 346, 33 South. 363; State v. Waldron, 128 La. 559, 54 South. 1009, 34 L. R. A. (N. S.) 809.
The judgment appealed from is therefore annulled, avoided, and reversed, and the case is remanded to the district court, to be there proceeded with in accordance with law.