491 So.2d 647 (1986)
STATE of Louisiana
v.
Charles HENDERSON, Jr.
No. 86-KK-0952.
Supreme Court of Louisiana.
July 7, 1986.
*648 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joseph DiRosa, Jr., Asst. Dist. Atty., for plaintiff-applicant.
Brian Begue, New Orleans, for defendant-respondent.
E. Pete Adams, District Attorney Assoc., amicus.
CALOGERO, Justice.
We granted writs on the state's application to review the decision of the Court of Appeal, 485 So.2d 656 (1986) in this case that a defendant charged with a first violation of La.Rev.Stat.Ann. § 14:98, driving while intoxicated, is entitled to a jury trial. Contrary to the decision of the Court of Appeal, we conclude that "special costs" mandated in La.Code Crim.Pro.Ann. art. 887(C) and (D) and the "reinstatement fee" required by La.Rev.Stat.Ann. § 32:414(G) are not disguised penalties which subject a defendant to "fines" which trigger the right to jury trial under La.Code Crim.Pro. art. 779.
The defendant, Charles Henderson, Jr., was arrested on June 11, 1984, and charged with driving while intoxicated (DWI), first offense, in the Traffic Court for the City of New Orleans. Among other pre-trial motions was the defendant's motion to quash the affidavit on grounds that La.Rev.Stat. Ann. § 14:98, first offense, requires a jury trial, foreclosing action by the Traffic Court, which lacks jurisdiction over jury trials by virtue of La.Rev.Stat.Ann. § 13:2501.1(F). The Traffic Court denied the motion, and the Criminal District Court for the Parish of Orleans upheld that ruling. On writ of certiorari, the Fourth Circuit Court of Appeal reversed both lower courts and held that a DWI first offender is entitled to a jury trial. Although the court of appeal opinion discussed the seriousness of the offense and repeated an assertion by a federal circuit court that only five states deny defendants the right to jury trial on DWI charges,[1] their holding was specifically based on their conclusion that the charged offense is punishable by fines of over $500 which mandates a trial by jury under La.Code Crim.Pro. art. 779(A).
La.Code Crim.Pro. art. 779(A) provides:
A. A defendant charged with a misdemeanor in which the punishment may be a fine in excess of five hundred dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict.[2]
*649 On its face, the penalty provision of the offense of operating a vehicle while intoxicated would not require a jury trial. La. Rev.Stat.Ann. § 14:98(B) states in pertinent part:
B. On a first conviction, the offender shall be fined not less than one hundred twenty-five dollars nor more than five hundred dollars and imprisoned for not less than ten days nor more than six months.
In fact, the penalty in § 14:98(B) was reduced in the same year that art. 779 was amended to provide its present requirements, indicating that § 14:98 was designed to provide the maximum penalty allowable without triggering the provisions of art. 779. See State v. Seals, 255 La. 1005, 233 So.2d 914 (1970).
However, the Legislature later added to La.Code Crim.Pro. art. 887, an article dealing with defendant's liability for costs, "special costs" which must be assessed against a defendant convicted of a violation of § 14:98 and to La.Rev.Stat.Ann. § 32:414, a statute dealing with license revocation, a "reinstatement fee" of fifty dollars. Under art. 887(C), a convicted offender who has been subjected to a blood, breath, or urine analysis must be assessed $50 to be paid to the governing authority whose law enforcement agency performed the analysis. And, art. 887(D) requires payment of another $50 to defray expenses of probation or incarceration. This cost is paid alternatively to the agency administering the prescribed substance abuse program, driver improvement program, or community service activities or to the custodian of the facility in which the offender is incarcerated.
The defendant contends that these "special costs" are more properly additional fines, which should be added to the penalties prescribed under § 14:98(B) to ascertain maximum penalty exposure. Under this reasoning, the cumulative penalty of at least $600 qualifies the DWI first offender for a jury trial under art. 779(A).
At least for purposes of determining its own appellate jurisdiction in criminal cases, however, this Court has consistently held that "costs" are not computed as part of the "fine" imposed on the defendant. State v. Roy, 152 La. 933, 94 So. 703 (1922); State v. Joseph, 137 La. 52, 68 So. 211 (1915); State v. Price, 124 La. 917, 50 So. 794 (1909); State v. Brannon, 34 La.Ann. 942 (1882). According to the Court in State v. Joseph, 68 So. at 212:
This court has held ... that the costs of court do not form part of the fine imposed, so as to give appellate jurisdiction to this court. But the payment of costs of court by a convicted person forms part of the sentence, even if it does not form part of the fine imposed, and the state has a clear right to impose the payment of costs in addition to a fine for the violation of one of its statutes.
The Legislature was presumably aware of this Court's long-standing distinction between fines and costs for the purpose of determining the seriousness of a sentence in a criminal case, when it adopted art. 779, tying the right of a jury trial in misdemeanors to "punishment [by a] fine in excess of five hundred dollars," and when it amended art. 887 to assess "special costs" for offenders convicted of violating § 14:98. And, there is no indication that the Legislature intended to change the classification of a DWI, first offense, from a petty to a serious crime or to disguise fines by calling them costs. Although the special costs differ from regular court costs in some respectsthey are not discretionary, and they are payable to agencies other than the courtthey are more closely related to court costs than to fines. The amounts involved are relatively small and are paid directly to the state agencies which incur special expenses in a successful prosecution, as opposed to the special account maintained by District Attorneys for "[a]ll *650 fines and forfeitures imposed by district courts," in accordance with the provisions of La.Rev.Stat.Ann. § 15:571.11.
With regard to the $50 "reinstatement fee" provided for in La.Rev.Stat.Ann. § 32:414(G), which follows the suspension of one's driver's license as the result of a conviction or of pleas of guilty or nolo contendere on a DWI offense, we note that this provision is a part of the licensing statute. The revocation is an action of the Department of Public Safety which occurs upon "satisfactory evidence" of the conviction or plea. After the period of suspension, the Department then collects the reinstatement fee. As such, it does not even form part of the sentence in a DWI case, and, like the "special costs" assessed under La.Code Crim. Pro. art. 887, it is not paid into the fund designated for "all fines and forfeitures" in the district court. And, license revocation has been characterized as regulatory rather than punitive even by courts which are inclined to view a DWI conviction as a serious offense. United States v. Craner, 652 F.2d 23, 26 (9th Cir.1981).
Furthermore, although the monetary assessments imposed on the DWI offender have risen, we note that the term of incarceration has not been increased. And, it is the six month period of imprisonment, not the $500 fine (an amount whose seriousness appears to have diminished with time) that was constitutionally recognized in Article I § 17[3] as the "bright-line" in Louisiana between petty and serious criminal offenses. This constitutional provision is in accord with the rule established by the United States Supreme Court, just four years before its enactment, that "no offense can be deemed `petty' for purposes of the right to trial by jury when imprisonment for more than six months is authorized." Baldwin v. New York, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970). The Baldwin court made no mention of a fine, and, in 1975, Justice White distinguished the punishments of incarceration and imposition of a fine in these words:
It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by [the defendant], imprisonment and fines are intrinsically different. Muniz v. Hoffman, 422 U.S. 454, 477, 95 S.Ct. 2178, 2191, 45 L.Ed.2d 319 (1975).
Subsequent to the United States Supreme Court's recognition that the $500 threshold was not the critical distinction between petty and serious offenses, Congress amended 18 U.S.C. § 1(3), which had classified a petty offense as a misdemeanor with a penalty which did not exceed six months imprisonment or a $500 fine, to raise the fine to $5000 for an individual or to $10,000 for a person other than an individual.
The dissenting opinion in this case very cleverly urges an alternate resolution. It is one not without arguable merit, as attested by the fact that it parallels the decision in the court of appeal. It nonetheless admits a central truth which is at the core of this opinion, that the Legislature "did not intend to grant trial by jury" in first offender DWI cases. That they designated the questioned sums as costs rather than fines was not a corruption of language, but *651 a utilization of language to which this Court in prior opinions has attached legal significance, as related more fully hereinabove.
For the foregoing reasons, we conclude that the "special costs" assessed convicted DWI first offenders under La.Code Crim. Pro.Ann. art. 887 (C) and (D) and the "reinstatement fee" required by La.Rev.Stat. Ann. § 32:414(G) are simply costs, and not fines. Thus they should not be added to the authorized $500 fine under La.Rev.Stat. Ann. § 14:98 so as to trigger La.Code Crim. Pro.Ann. art. 779(A)'s right to trial by jury where "punishment may be a fine in excess of $500."

Decree
Accordingly the judgment of the Court of Appeal is reversed and the judgments of the Traffic Court of the City of New Orleans and the Criminal District Court, Parish of Orleans denying defendant's motion to quash are reinstated.
COURT OF APPEAL JUDGMENT REVERSED; TRAFFIC COURT AND DISTRICT COURT JUDGMENTS REINSTATED; MOTION TO QUASH DENIED; REMANDED TO TRAFFIC COURT.
DIXON, C.J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
This is a poor way to treat a perfectly good language.
What the legislature intended was to increase the penalties for DWI. It did not intend to grant trial by juries. To avoid the effect of existing legislation granting jury trials in cases where a fine of more than $500 could be imposed, the added fines are called "special costs." The majority adopts this corrupt use of language to avoid jury trials in numbers that might cripple the trial courts. Because it is easier to change the language than to make hard decisions, "fines" now become "court costs"a crude and destructive short-cut which eliminates the need for honest, straightforward, lawmakingan option that was open to the legislature.
The same option is open to this court. We could call a "fine" a "fine." We did it in State v. Rugon, 355 So.2d 876, 877 (La. 1977), where we said a "fine" was "a sum expressly imposed in lieu of, or in addition to a term of imprisonment, or as any part of the punishment for an offense." (Emphasis added).
We didn't reach into the air for that definition; we copied it from an old case, State v. Brannon, 34 La.Ann. 942 (1882). In 1909, State v. Price, 124 La. 917, 50 So. 794, defined a fine as "a pecuniary penalty." Price was followed in 1944 by McHugh v. Placid Oil Co., 206 La. 511, 531, 19 So.2d 221, 227, where we said "... a fine is a pecuniary exaction, imposed as a punishment for violation of the law, and collectible by proceedings of public authority either Criminal or Civil in form...."
C.Cr.P. 887 is divided into four parts. Paragraph (A) provides that a defendant who is convicted shall be liable for all costs of the prosecution or proceeding. Paragraph (A) was enacted by Act 310 of 1966. In 1981 Paragraph (C) was enacted, requiring the assessment, "In addition to the costs provided in Paragraph (A) .... an additional $50" if the defendant was subjected to blood or breath tests, whether used in the trial or not. Paragraph (D) was added in 1983 (Act 57, 1st Extra Session) specifically requiring, "In addition to the costs provided in Paragraphs A and C," the assessment of an additional $50 to defray expenses of probation or of incarceration almost exactly what we held to be a "fine" in State v. Rugon, supra.
In 1973 Sidney J. Harris wrote that we ought not "abandon our responsibility as guardians of law and morals, as well as of language."[1]
*652 The judicial method of statutory interpretation employed by the majority can only be justified by its expedience. It avoids the mischief of jury trials for DWI cases (a basic right in many states) for which our judicial system is not equipped. But it also adds a note of instability and unpredictability to our law, where we could have symmetry.
In my view, the right to trial by jury in DWI cases is much less an evil than the corruption of the language.
NOTES
[1] The Court of Appeal cites United States v. Craner, 652 F.2d 23, 27 n. 5 (9th Cir.1981) for the proposition that only five states deny defendants the right to jury trial on DWI charges, "indicating the national view of the seriousness of the offense." 485 So.2d at 658. Craner in turn relies on Annot., 16 A.L.R. 3d 1373 (1967 and 1980 Supp.) as the source of this information. Such reliance appears to be misplaced. In fact, the original 1967 annotation considered the law of eleven states only and found that five of those eleven states concluded that a defendant has no right to trial by jury in prosecutions for operating a motor vehicle while intoxicated. Furthermore, a 1985 supplement to that annotation continues to discuss the split of authority throughout the nation.
[2] The minimum penalty requirements for a jury trial, which separate petty from serious offenses, were apparently borrowed from the classification of offenses in 18 U.S.C. § 1(3) before its recent amendment. The United States Supreme Court in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which held that Louisiana could not punish simple battery as a two year misdemeanor and still deprive defendant of a jury trial, had suggested objective criteria to determine whether the length of the prison term or the seriousness of other punishment required jury trial, and specifically cited the practice in the federal system. Accordingly, in the 1968 legislative session, the federal standard (imprisonment not to exceed six months and a fine of not more than $500) was adopted, and the penalty provision of many criminal statutes was simultaneously reduced to a maximum of six months in prison and $500 in fines.
[3] La. Const. art. I, § 17 provides:

Section 17. A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, five or whom must concur to render a verdict. The accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury. (Emphasis provided.)
[1] To complete Harris' thought, he concluded: "Once we begin to tolerate, or overlook, sloppy usage in language, our whole system of human communication becomes vulnerable to the vilest manipulation. It is not the snob who would preserve good form, but the true democrat, who knows, like Confucius, that `corrupt government begins with the use of the wrong word.'"