**Philip LANDRY, Petitioner–Appellant,**

v.

**Judge J. Robert HOEPFNER and William Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.**

No. 85–3784.

United States Court of Appeals, Fifth Circuit.

March 17, 1988.

---

Mark McTernan, McTernan, Parr & Rummage, New Orleans, La., for petitioner-appellant.

Wayne J. Blanchard, Shreveport, La., for amicus curiae—La. Assoc. Crim. Def. Lawyers.

Okla Jones, City Atty., New Orleans, La., for amicus curiae—City of New Orleans.

Louis M. Fischer, Criminal Div., Dept. of Justice, Washington, D.C., for amicus curiae—U.S.

Dorothy A. Pendergast, Research and Appeals, Gretna, La., for respondents-appellees.

Rene I. Salomon, Asst. Atty. Gen., Baton Rouge, La., for amicus curiae—DA's.

E. Pete Adams, Executive Director, La. Dist. Attys. Assoc., Inc., Baton Rouge, La., for amicus curiae—Exec. Dir. La. DA's Assoc.

Before CLARK, Chief Judge, GEE, RUBIN, GARZA, REAVLEY, POLITZ, KING,[*] JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.[**]

GARWOOD, Circuit Judge:

The question presented in this habeas corpus case is whether in a Louisiana prosecution for a first offense of operating a vehicle while intoxicated (DWI), the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, entitles the accused to a jury trial notwithstanding that the five hundred dollars fine and six months' imprisonment maximum penalty prescribed for the infraction does not exceed that appropriate for "petty" offenses under *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Disagreeing with the panel's contrary determination, *Landry v. Hoepfner*, 818 F.2d 1169 (5th Cir.1987), this Court en banc now holds that the United States Constitution does not require the states to provide the right of trial by jury for such an offense. We accordingly affirm the district court's dismissal of appellant's petition under 28 U.S.C. § 2254 attacking his Louisiana DWI conviction.

I.

Petitioner-appellant Philip Landry (Landry), who waived his right to counsel and represented himself, was charged with, and following a January 1984 bench trial was convicted by the First Parish Court of Jef-

---

[*] Formerly Carolyn Dineen Randall.

[**] Due to his death on October 19, 1987, Judge Hill did not participate in this decision.

Judge Jerry E. Smith was not a member of the Court when this case was submitted to the Court en banc and did not participate in this decision.

ferson Parish, Louisiana of, first offense DWI, contrary to LSA–R.S. § 14:98.[1] Pursuant to section 14:98 B, which authorizes a maximum sentence of a five hundred dollars fine and six months' imprisonment for this offense,[2] Landry was sentenced to a fine of three hundred dollars and a term of six months in the Jefferson Parish Correctional Center.[3] The confinement sentence was suspended for two years, during which period Landry was placed under probation requiring him to perform four days of community service work, attend four days of driver improvement courses, and undergo evaluation at the Jefferson Parish Substance Abuse Clinic.[4]

1. At the time of Landry's offense, September 13, 1983, section 14:98 provided in pertinent part: "A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, vessel or other means of conveyance while under the influence of alcoholic beverages, narcotic drugs, central nervous system stimulants, hallucinogenic drugs or barbiturates." *See State v. Landry,* 463 So.2d 761, 765 (La.App. 5th Cir.), *writ denied,* 464 So.2d 1373 (La.1985). Landry's offense was "operating" a "motor vehicle" "while under the influence of alcoholic beverages."

Pursuant to enactment effective January 1, 1984 (Acts 1983, No. 634, § 1), section 14:98 A was amended to read:
"A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
"(1) The operator is under the influence of alcoholic beverages; or
"(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
"(3) The operator is under the influence of narcotic drugs, central nervous system stimulants, hallucinogenic drugs, or barbiturates."
This remains the present form of section 14:98 A, except that in 1985 paragraph (3) was rewritten to provide: "(3) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964." (Acts 1985, No. 764, § 1.)

2. Section 14:98 B provides:
"B. On a first conviction, the offender shall be fined not less than one hundred twenty-five dollars nor more than five hundred dollars and imprisoned for not less than ten days nor more than six months. Imposition or execution of sentence shall not be suspended unless:
"(1) The offender is placed on probation with a minimum condition that he serve two days in jail and participate in a court-approved substance abuse program and participate in a court-approved driver improvement program; or
"(2) The offender is placed on probation with a minimum condition that he perform four eight-hour days of court-approved community service activities, participate in a court-approved substance abuse program and participate in a court-approved driver improvement program."

3. Additionally, Landry was assessed fifty dollars as costs under LSA–C.Cr.P. art. 887(D), which provides that "a person convicted of a violation of R.S. 14:98 ... shall be assessed an additional fifty dollars as special costs to be used to defray expenses of administering conditions of probation or of incarceration." Article 887(C), LSA–C.Cr.P., also provides for fifty dollars as costs for any blood, breath, or urine test for presence of alcohol or narcotics, but Landry, who underwent no such test, was not assessed costs under article 887(C). Costs pursuant to articles 887(C) and (D) are not deemed a fine or punishment under Louisiana law. *See State v. Henderson,* 491 So.2d 647 (La.1986).

Under Louisiana law, no failure to pay a fine or costs in relation to a misdemeanor conviction, for which the maximum sentence to confinement is six months or less, can result in confinement which, when added to any imposed directly as part of the sentence for that offense, exceeds six months in total. LSA–C. Cr.P. art. 884. *See State v. Thigpen,* 275 So.2d 760 (La.1973).

4. Landry was also charged in the same proceeding with violating LSA–R.S. § 14:99, which condemns operating a motor vehicle "in a criminally negligent or reckless manner" and provides for a maximum sentence of a two hundred dollars fine and ninety days' imprisonment. The charge under section 14:99 was dismissed at the conclusion of trial. Under LSA–C.Cr.P. art. 493.1, which provides that where two or more misdemeanors are jointly charged "the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than five hundred dollars, or both," the presence of the charge under section 14:99 did not increase the maximum sentence to which Landry would have been exposed had the section 14:99 offense not been charged. *State v. Landry,* 463 So.2d 761, 764 (La.App. 5th Cir.), *writ denied,* 464 So.2d 1373 (La.1985); *State v. Vieto,* 453 So.2d 259 (La.App. 5th Cir.), *writ denied,* 457 So.2d 1183 (La.1984). *See also State v. Johnson,* 458 So.2d 1301 (La.1984). And, as Landry was not convicted of violating section 14:99, the charging of that offense is hence immaterial to the present section 2254 suit. The panel opinion correctly attached no significance to the section 14:99 charge, and Landry has not asserted before this Court that it has any relevance.

Under Louisiana law, there is no entitlement to trial by jury in respect to misdemeanors for which the maximum sentence does not exceed a five hundred dollars fine and imprisonment for not more than six months. LSA–C. Cr. P. art. 779.[5] A first offense violation of section 14:98—DWI—is a misdemeanor.[6] Accordingly, since the penalty provided for first offense DWI in section 14:98 B does not exceed a five hundred dollars fine and six months' imprisonment, it is recognized in Louisiana law that there is no entitlement to trial by jury for such offense. *See e.g., State v. Thigpen,* 275 So.2d 760 (La.1973); *State v. Hayden,* 437 So.2d 294 (La.App. 1st Cir. 1983); *State v. Henderson,* 491 So.2d 647 (La.1986).

Following his conviction and sentence, Landry retained counsel and sought appellate review of his conviction, asserting that he was denied his right to trial by jury because he was not informed of it by the trial court and that the provisions of the Louisiana statutes and Constitution purportedly denying the right to a jury trial were invalid as contrary to the Sixth and Fourteenth Amendments of the United States Constitution. The Louisiana Court of Appeals affirmed his conviction and sentence. *State v. Landry,* 463 So.2d 761 (La.App. 5th Cir.1985). It held that "defendant was not entitled to a jury trial" under Louisiana law, *id.* at 764, and that Landry's complaints as to the invalidity under the United States Constitution of the Louisiana statutory and constitutional provisions in this respect were waived by his failure to raise them at trial. *Id.* at 763.[7] The Louisiana Supreme Court denied Landry's application for writ of certiorari and/or review without opinion. *State v. Landry,* 464 So.2d 1373 (La.1985).

Landry thereafter brought the instant habeas corpus proceedings under 28 U.S.C. § 2254, challenging his DWI conviction.[8] The district court ruled that because the maximum penalty for this first offense

---

**5.** Article 779 provides:

"A. A defendant charged with a misdemeanor in which the punishment, as set forth in the statute defining the offense, may be a fine in excess of five hundred dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict.

"B. The defendant charged with any other misdemeanor shall be tried by the court without a jury."

The statute has been in this form since 1979, except that in 1986 the "as set forth in the statute defining the offense" wording was added (Acts 1986, No. 852, § 1). The five hundred dollars, six months' cutoff has been a part of the statute since 1968; formerly, no misdemeanors were triable by jury. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Article 779 A has long been authoritatively construed as if it included "or both" with respect to fine or imprisonment. *State v. Seals,* 255 La. 1005, 233 So.2d 914 (1970). Court costs, including those under LSA–C.Cr.P. art. 887, are not included in determining the amount of the fine. *State v. Henderson,* 491 So.2d 647 (La.1986).

Article 2, section 17, of the Louisiana Constitution provides for a jury trial in all capital cases, in all cases "in which the punishment is necessarily confinement at hard labor," and in all cases "in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months." If the statutory penalty language does not specify that the confinement is to be at hard labor, it is considered to be without hard labor. *See* note 6, *infra.*

**6.** Louisiana law defines a "felony" as "an offense that may be punished by death or by imprisonment at hard labor," and a "misdemeanor" as "any offense other than a felony." LSA–C.Cr.P. arts. 933(3) & (4). *See also* LSA–R. S. §§ 14:2(4) & (6) (same). For this purpose, if the statutory penalty language does not specify that the imprisonment is to be at hard labor—and the penalty language of section 14:98 B does not so specify (*see* note 2, *supra*)—then the imprisonment is considered to be without hard labor and the offense is accordingly a misdemeanor. *State v. Cobb,* 450 So.2d 59 (La.App. 3d Cir.1984); *State v. Griffin,* 455 So.2d 681, 683 n. 2 (La.App. 2d Cir.), *writ denied,* 458 So.2d 128 (La.1984).

**7.** Landry also claimed that the evidence was insufficient to support his conviction. The Louisiana Court of Appeals held that the evidence was sufficient. Landry did not pursue that claim in his appeal from the district court's denial of his section 2254 petition.

**8.** Although Landry's probation has by now doubtless expired, it was still in effect when his section 2254 petition was filed. Thus, he remains procedurally eligible for section 2254 relief. *See Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Carafas v. La Vallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

DWI was six months' confinement and a five hundred dollars fine, the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, did not entitle Landry to a jury trial. Accordingly, it dismissed Landry's petition. A panel of this Court reversed, holding that the Sixth Amendment entitled Landry to a jury trial because of the serious nature of the offense of DWI and the adverse collateral consequences of conviction thereof. *Landry v. Hoepfner, supra.*[9] We agree with the district court and disagree with the panel, and we therefore affirm the dismissal of Landry's habeas petition.

## II.

Article III, Section 2, of the Constitution provides, in its third clause, that "[t]he trial of all crimes ... shall be by jury," and the Sixth Amendment requires "[t]hat in all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury...." It was recognized, however, that these provisions, though they applied to misdemeanors as well as felonies, did not extend the right of trial by jury to "petty offenses." *Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 1306–07, 32 L.Ed. 223 (1888); *Schick v. United States,* 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904); *District of Columbia v. Colts,* 282 U.S. 63, 51 S.Ct. 52, 53, 75 L.Ed. 177 (1930); *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937).[10] Long after those decisions, the Supreme Court, rejecting contrary dicta in several earlier opinions, for the first time held that the Sixth Amendment was made applicable to the states by the Fourteenth Amendment, and that the states were hence likewise obliged to afford the right of trial by jury in criminal prosecutions. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Nevertheless, in *Duncan,* the Court acknowledged "that there is

a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States." *Id.* 88 S.Ct. at 1453 (footnote omitted). While recognizing that for this purpose it would inevitably become "necessary to draw a line in the spectrum of crime, separating petty from serious infractions," *id.* at 1453, the *Duncan* Court was not required to "settle in this case the exact location of the line" for it determined that the maximum authorized sentence of two years' imprisonment clearly placed the offense there involved in the "serious" category. *Id.* at 1454. Subsequently, in *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the Court refused to draw the line on the basis of whether the offense was felony or misdemeanor, but rather fixed it on the basis of whether the maximum permissible confinement exceeded six months, referring to the congressional definition of "petty offenses." *Id.* 90 S.Ct. at 1888–90. Nevertheless, *Baldwin* does not expressly hold that *all* offenses for which the maximum authorized confinement does not exceed six months are necessarily to be considered "petty" for this purpose. Accordingly, although under the criteria applied in *Baldwin* the present offense is "petty," the question whether the Sixth and Fourteenth Amendments nevertheless mandate that Louisiana afford for this infraction a right of trial by jury necessitates a closer examination of the "petty offense" doctrine and its development both before and after *Duncan* and *Baldwin.*

Before undertaking such an analysis, it is well to keep in mind three somewhat obvious general observations respecting the "petty offense" doctrine which is the core of our concern in this case. To begin with, the doctrine is one of *federal*

---

9. The panel likewise held that Landry, as he was *pro se* and not advised of his rights, did not waive his right to a jury trial by failing to request a jury in the trial court. 818 F.2d at 1178. As we hold that Landry had no constitutional right to a jury trial, we pretermit the waiver issue.

10. The decisions indicate that there is no distinction between the jury trial provisions of Article III, Section 2, and the Sixth Amendment with respect to the grade or character of offense which gives rise to entitlement to a jury. *See, e.g., Callan,* 8 S.Ct. at 1303–04.

constitutional law. It does not prevent the states—or the federal government—from granting a jury trial right in petty offenses; it speaks only to when the United States Constitution mandates such a right. As noted in more detail below, in many states the petty offense doctrine is simply not recognized, so that for *all* criminal prosecutions, whether or not the offense charged is "petty," there is a right to jury trial, by virtue of state constitutional or statutory law.[11] In the second place, under our "petty offense" doctrine, the question is not whether the infraction is a "crime" or the penalty for it civil or criminal, nor whether the penalty may include any substantial confinement, as is determinative of jury trial right in a number of states. Rather, it is clear that an infraction may be a "petty offense," for which the United States Constitution does not require that there be a right of trial by jury, notwithstanding that it is clearly a "crime" which may be punished by as much as six months' imprisonment. *See, e.g., Duncan,* 88 S.Ct. at 1453 ("Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses."). Finally, the fact that an offense is "petty" for these purposes does not mean that in a prosecution for it the accused is not entitled to the other constitutional protections, including those of the Sixth Amendment, afforded the criminal defendant. Thus, in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court held that the Sixth Amendment right to counsel extended to petty offenses, and rejected "the premise that since prosecutions for crimes punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer." *Id.* 92 S.Ct. at 2009. *See also id.* at 2008 (indicating that other Sixth Amendment protections, such as those for public trial, confrontation, compulsory process, and notice, likewise apply to "petty" offenses).

We now turn to review, in somewhat more detail and in historical context, how the Supreme Court has defined "petty" offenses over the years.

In *Callan,* the Court noted that the Constitution's jury trial provisions are "to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury." 8 S.Ct. at 1303. *Callan* concerned a conspiracy prosecution, and the Court, recognizing that at common law "petty" offenses were not triable by jury, proceeded to review in detail the authorities reflecting that conspiracy was an indictable offense at common law; hence it held that a jury was required even though the case was tried in municipal court. *Id.* at 1306–07.[12] In *Schick,* the Court, in holding that a petty offense did not require trial by jury, relied on *Callan* and especially emphasized that the constitutional provisions relevant in this respect "must be read in the light of the common law." 24 S.Ct. at 827.[13] The issue was next considered in *Colts,* where the ac-

---

11. Indeed, Justices Black and Douglas were of the view that the Sixth Amendment and Article III, Section 2, made no distinction between "petty" and "serious" crimes. *Baldwin,* 90 S.Ct. at 1891 (concurring opinion). Chief Justice Burger was of the view that, at least for purposes of application of the Sixth Amendment to the states through the Fourteenth Amendment, the jury trial guarantee extended only to "serious" crimes, which could include those punishable by a year's imprisonment. *Id.* at 1892 (dissenting opinion). Justice Harlan, who had dissented in *Duncan,* thought "it appropriate to draw the line at six months in federal cases, although" he "would not encumber the States by this requirement." *Baldwin,* 90 S.Ct. at 1916–17 (dissenting opinion). Justice Stewart likewise dissented, stating that he "substantially agree[d]" with Justice Harlan. *Id.* at 1928.

12. *Callan* quoted an early Massachusetts decision to the effect that, under " '[t]he general rule of the common law,' " conspiracy " 'is a criminal and indictable offense,' " and, after reviewing other decisions and texts also indicating the seriousness with which the common law viewed conspiracy, observed, "These authorities are sufficient to show the nature of the crime of conspiracy at common law." 8 S.Ct. at 1306, 1307. *Callan* then proceeded to hold that accordingly conspiracy could not be regarded as a "petty" offense, and hence a jury was required.

13. And *Schick* concluded, "[I]t is obvious that the intent [of the framers] was to exclude from the constitutional requirement of a jury the trial of petty criminal offenses." *Id.*

cused, charged with the offense of driving "recklessly 'so as to endanger property and individuals,'" which "was an indictable offense at common law," was held entitled to a jury although the maximum punishment did not exceed thirty days in jail and a one hundred dollars fine. 51 S.Ct. at 53. Again, the Court stressed that in this respect the Constitution's jury trial "provision is to be interpreted in the light of the common law." *Id.*

The last of the Court's presently significant pre-*Duncan* decisions is *Clawans.* There the defendant was charged with selling secondhand property without the required license, an offense punishable by ninety days' imprisonment. Noting that the offense "was not indictable at common law," *Clawans* nevertheless considered whether "the severity of the penalty" might be "sufficient to bring it within the class of major offenses, for the trial of which a jury may be demanded." 57 S.Ct. at 662. The Court observed that at the time of the American Revolution there were petty offenses, triable without a jury "under English statutes, which carried possible sentences of imprisonment for periods from three to twelve months," and that of the statutes in that time of the "Colonies" or the "newly-created states" some sixteen authorized imprisonment for three months or more, and eight others for as much as six months, without a jury trial. *Id.* at 662–63. Obviously concerned with the prospect of imprisonment for as long as nine months or a year, or possibly more, being imposed without the safeguard of a jury's availability, the Court remarked that "commonly accepted views of the severity of punishment by imprisonment may become so modified that a penalty once thought to be mild may come to be regarded as so harsh as to call for the jury trial, which the Constitution prescribes, in some cases which were triable without a jury when the Constitution was adopted." *Id.*

at 663. Then, in words that presaged *Baldwin* and its progeny, *Clawans* continued:

"But we may doubt whether summary trial with punishment of more than six months' imprisonment, prescribed by some pre-Revolutionary statutes, is admissible, without concluding that a penalty of ninety days is too much." *Id.* at 663 (footnote omitted).[14]

Within that framework, however, the maximum permissible penalty for this purpose is not to be resolved "subjectively" but rather "by objective standards," principally the greatest penalties which Congress and at least some of the states allow to be imposed without entitlement to trial by jury. *Id.* at 663–64. This analysis was *not* a head counting exercise to determine the consensus practice around the nation, but rather simply reflected statutes (from as early as 1898) or decisions (from 1862 to 1932) or both in only thirteen different states. *Id.* at 663 n. 6, 664 n. 7.

In *Duncan*, though the Court did not precisely fix the standard by which "petty" offenses were to be distinguished, it noted that the authorized penalty was "of major relevance" for this purpose, and that "[t]he penalty authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments' ... [quoting *Clawans*] of the crime in question." 88 S.Ct. at 1453. *Duncan* likewise stressed the need "to refer to objective criteria," *id.* at 1453, and went on to observe:

"In the federal system, petty offenses are defined as those punishable by no more than six months in prison and a $500 fine [citing 18 U.S.C. § 1]. In 49 of the 50 states crimes subject to trial without a jury ... are punishable by no more than one year in jail. Moreover, in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-

---

**14.** The Court's mention here of "pre-Revolutionary statutes" authorizing summary trial for offenses with *more* than six months' imprisonment was footnoted to refer to the *English* statutes, some of which had penalties as long as a year. *Id.* 57 S.Ct. at 662 n. 2, 663 n. 5. No

reference was made in this connection to the early state or colonial statutes which the opinion had *not* described as authorizing *more* than six months in nonjury cases. *Id.* at 662–63 nn. 3 & 4.

month prison term...." *Id* at 1453–54 (footnotes omitted).

*Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969), reiterated that "[i]n determining whether a particular offense can be classified as 'petty,' this Court has sought objective indications of the seriousness with which society regards the offense.... The most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission." [15]

In *Baldwin,* the Court again stated that "[i]n deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense ... and we have found the most relevant such criteria in the severity of the maximum authorized penalty." 90 S.Ct. at 1888. It continues by observing:

"In the federal system, as we noted in *Duncan,* petty offenses have been defined as those punishable by no more than six months in prison and a $500 fine [citing 18 U.S.C. § 1]. And, with a few exceptions, crimes triable without a jury in the American States since the late 18th century were also generally punishable by no more than a six-month prison term." *Id.* at 1889 (footnotes omitted).

*Baldwin* then concludes with the statement:

"Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages [of conviction and imprisonment], onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications. We cannot, however, conclude that these administrative conveniences, in light of the practices that now exist in every one of the 50 States as well as in the federal courts, can similarly justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment." *Id.* at 1890–91 (footnote omitted).

It is to be noted that *Duncan* and *Baldwin* both reference the congressional definition of petty offenses, with its six months' maximum possible confinement. [16] Since *Baldwin,* the Court has spoken *only* in terms of the length of possible confinement as establishing the dividing line between "petty" and serious offenses. Two years after *Baldwin,* the Court in *Argersinger* observed:

"The right to trial by jury, also guaranteed by the Sixth Amendment by reason of the Fourteenth, was limited by Duncan v. Louisiana, *supra,* to trials where the potential punishment was for six months or more." 92 S.Ct. at 2008.

And, two years after *Argersinger,* the Court in *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974), stated, referring to *Duncan* and *Bloom (see* note 15, *supra* ):

"Since that time, our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less

---

**15.** *Frank* followed *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), which was decided the same day as *Duncan* and held that criminal contempts would be treated "like other crimes insofar as the right to jury trial is concerned," except that if there were no legislatively fixed maximum sentence, then the sentence actually imposed would be looked to "as the best evidence of the seriousness of the offense." 88 S.Ct. at 1486–87.

**16.** Section 1, 18 U.S.C., provides:

"Notwithstanding any Act of Congress to the contrary:

"(1) Any offense punishable by death or imprisonment for a term exeeding one year is a felony.

"(2) Any other offense is a misdemeanor.

"(3) Any misdemeanor, the penalty for which, as set forth in the provision defining the offense, does not exceed imprisonment for a period of six months or a fine of not more then $5,000 for an individual and $10,000 for a person other than an individual, or both, is a petty offense."

Clause (3) was amended in 1984 by adding the language "as set forth in the provision defining the offense" and by substituting "$5,000 for an individual and $10,000 for a person other than an individual" in lieu of the previous "$500." Pub.L. 98–596 §§ 8(1), (2).

are petty crimes." [17]

We do not suggest that *Callan* or *Colts* have been overruled *sub silentio*—certainly, that is not for us to say. An offense indictable at common law is not a "petty offense" for purposes of Article III, Section 2, clause 3, or the Sixth Amendment even though it carries no more than a one-month maximum sentence. *Colts.* Nevertheless, we believe three significant points emerge from an analysis of the Supreme Court's writings in this area.

First, it seems clear that the Court originally followed strictly common law precedent, but with some developing concern that this might allow severe penalties without the protection of a jury. This possibility—and doubtless the related danger posed by burgeoning statutory offenses without common law antecedents—in effect opened the prospect of a potentially troublesome gap in the protection which the Constitution's jury trial provisions were intended to afford. Ultimately, the Court chose to close that gap by employing *Baldwin*'s objective, bright-line test grounded in the historical practice of the Colonies and the original states.

Second, the Court has *never* held or stated any crime is a "serious" rather than a "petty" offense on the basis of any criteria other than whether its maximum authorized confinement exceeded six months or whether it was indictable at common law. Otherwise put, the Court has never identified any particular offense as being nonpetty which was both not indictable at common law and carried a maximum authorized confinement of not more than six months.

Finally, the overall trend of emphasis in the opinions, and the language in the most recent, such as that above-quoted from *Codispoti*, strongly counsel against an expansive reading of *Callan* or *Colts* to authorize the federal courts to declare an offense nonpetty on the basis of any criteria *other than* whether it was indictable at common law and whether its maximum sentence exceeds the *Baldwin* line. These two criteria make for a bright-line, objective test. To add a third criterion—the judicial perception of the "seriousness" *otherwise* of the offense, either intrinsically or as the judges conceive the "public" to generally regard it apart from the status it had at common law and its current maximum penalty—is to inject an inherently and inescapably subjective and imprecise factor into the calculus. Essentially, this would involve judges in applying the same sort of criteria that the legislative branch did in the first place when it fixed the maximum sentence. Legislatures, however, are far better equipped to perform the task, and are likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect.

It is, moreover, particularly undesirable to inject such imprecise and subjective criteria into the calculus now that the Sixth Amendment has been held applicable to the states, for to do so imposes a false national uniformity.[18] What is "serious" in Vermont may not be "serious" in Louisiana, in

---

**17.** The panel majority found support in the dissenting opinion of Justice White, joined by (then) Justice Rehnquist, in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 2101, 80 L.Ed.2d 732 (1984). We are not persuaded of *Welsh*'s relevance. *Welsh* was a Fourth Amendment, not a right to jury trial, case. *Cf. Argersinger.* Moreover, the majority in *Welsh* observed: "Given that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." 104 S.Ct. at 2100 n. 14. Justice Blackmun in his concurrence expressed a similar view. *Id.* at 2100, 2101. Moreover, it is clear that the *Welsh* dissent was not advocating that the federal judi-

ciary "trump" Wisconsin's characterization of the offense there involved (DWI), but rather that Wisconsin was *free both* to treat that offense as one of civil forfeiture and *also* to authorize arrest therefor without a warrant (as did the Wisconsin statute), which might be made in-home in exigent circumstances. *Id.* at 2101, 2104 (dissenting opinion of Justice White).

**18.** It is thus not without significance that shortly after *Duncan* the Court considerably broadened the character of trials which would qualify as jury trials for Sixth Amendment purposes. The same day *Baldwin* was decided, the Court held in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), that six-person juries would suffice in state criminal prosecutions for nonpetty crimes, and two years later it was

terms either of a particular problem's concrete manifestations or of the popular perception or evaluation of it in each of those states. Not only do conditions vary from state to state, but so do people's attitudes, both normative and prudential. Accordingly, at least respecting offenses not indictable at common law, when the legislature of a state elects to make criminal certain conduct within that state's borders, it is likewise entitled to determine that the offense it has created shall not be a "serious" one by fixing for it a maximum penalty which is concededly "petty" under the bright-line rule of *Baldwin.* Inevitably, different determinations will be made in different states, and within any one state there will also be *bona fide* disagreement. But there is simply no warrant in history, precedent, or policy for the federal judiciary to second-guess that legislative determination on the basis of the judiciary's own conclusions, which are necessarily grounded in subjective, unquantifiable criteria, respecting the intrinsic or publicly perceived seriousness of that offense against the laws of that particular state.

### III.

Turning now to the specific offense of DWI, the panel recognized the absence of

held in *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), that less than unanimous verdicts were acceptable in state criminal prosecutions of nonpetty offenses. Both of these decisions were contrary to many pre-*Duncan* statements, if not holdings, of the Court respecting Article III, Section 2, clause 3, and the Sixth Amendment and to the long-established universal practice and common understanding during that period respecting those provisions. One cannot but suppose that the specter of diminished state flexibility posed by *Duncan* likely had substantial influence on these results. As Justice Harlan said of *Williams:* "The decision evinces ... a recognition that the 'incorporationist' view of the Due Process Clause of the Fourteenth Amendment, which underlay *Duncan* and is now carried forward into *Baldwin,* must be tempered to allow the States more elbow room in ordering their own criminal systems." *Baldwin,* 90 S.Ct. at 1915 (Harlan, J., opinion dissenting in *Baldwin* and concurring in the result in *Williams*). Subsequently, Justice Powell, whose concurrence was necessary to the affirmance in *Apodaca,* rejected the principle that the requirements of the Sixth Amendment, as applied to the federal

"authority for the proposition that DWI constituted an indictable offense at common law." 818 F.2d at 1175. Indeed, the authorities hold that DWI was not such an offense. *State v. Rodgers,* 91 N.J.L. 212, 102 A. 433 (1917); *Whirley v. State,* 450 So.2d 836, 838 (Fla.1984); *State ex rel. Sellers v. Parker,* 87 Fla. 181, 100 So. 260 (1924); *State v. Morrill,* 123 N.H. 707, 465 A.2d 882, 885 (1983); *Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479, 16 A.L.R.3d 1362, 1368 (1966) ("the offense of driving while under the influence of intoxicating liquor was not a common law offense"). This is also made clear by our following discussion of *Colts* and *Clawans.*

Whether DWI in particular is such an offense as constitutionally requires a jury trial despite carrying only a "petty" maximum penalty has also been addressed by the Supreme Court, twice indirectly prior to *Duncan* and more recently in a summary affirmance respecting a Louisiana DWI prosecution.

The latter case is *Bairnsfather v. Louisiana,* —— U.S. ——, 107 S.Ct. 1620, 95 L.Ed.2d 195 (1987), where the Court's memorandum order states, "The appeal is dismissed for want of a substantial federal

government, were the same as those applied to the states through the Fourteenth Amendment. *Apodaca,* 92 S.Ct. at 1635, 1637. Similarly, in *Ludwig v. Massachusetts,* 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), four justices voted to reverse on the basis that *Callan's* Sixth Amendment trial *de novo* rule was applicable to the states and had been violated; Justice Powell provided the crucial vote for affirmance on the basis that this aspect of *Callan* did not apply to the states. *Ludwig,* 96 S.Ct. at 2789 ("[T]he right to a jury trial afforded by the Fourteenth Amendment is not identical to that guaranteed by the Sixth Amendment."). Justice Powell's view in this respect, though clearly a minority one on the Court, was nevertheless decisive on at least those two occasions (and doubtless is the reason that the juries required in federal criminal cases must still be of twelve persons and reach unanimous verdicts).

This process of jurisprudential development, then, provides a further caution against any broad reading of pre-*Duncan* opinions which would have the effect of reducing the "elbow room" allowed the states in ordering this aspect of their criminal justice systems.

question." Justices Brennan, Powell, and Scalia "would note probable jurisdiction and set the case for oral argument"; and Justice Stevens "would dismiss the appeal for want of jurisdiction." *Id.* We have examined the Jurisdictional Statement, and its several appendixes, as well as the State of Louisiana's Motion to Dismiss or Affirm, and the appellant's motion for rehearing in *Bairnsfather.* There, Bairnsfather was charged in the Louisiana courts with second offense DWI, contrary to LSA–R.S. § 14:98.[19] He filed a motion in the trial court requesting a jury trial, asserting that he was entitled to a jury under the Sixth Amendment to the United States Constitution because second offense DWI was a serious, and not a petty, offense by reason of its nature, the consequences of conviction and the sentence imposable, and that LSA–C.Cr.P. art. 779(B) (*see* note 5, *supra*), denying the right to a jury trial, was invalid as contrary to the Sixth Amend-

ment. The trial court denied the motion, and Bairnsfather sought review in the Louisiana Court of Appeal, Second Circuit, which denied relief.[20] The Louisiana Supreme Court likewise denied relief without opinion (Chief Justice Dixon dissenting). *State v. Bairnsfather*, 491 So.2d 1336 (La. 1986).[21] Bairnsfather appealed to the United States Supreme Court, and his Jurisdictional Statement there presents essentially the same issues as those presented by Landry's appeal.[22] The Jurisdictional Statement advances essentially the same arguments and authorities[23] in support of Bairnsfather's contention that he was entitled to a jury trial under the Sixth Amendment as does the panel opinion in this case. The state, in its Motion to Dismiss or Affirm, relied almost exclusively on the ground that the maximum fine of five hundred dollars and the maximum confinement of six months authorized for the violation rendered it a "petty" offense under *Bald-*

**19.** The penalty for second offense DWI is fixed in section 14:98 C as follows:

"C. On a second conviction, regardless of whether the second offense occurred before or after the first conviction, the offender shall be fined not less than three hundred dollars and not more than five hundred dollars and imprisoned for not less than thirty days nor more than six months. Imposition or execution of sentence shall not be suspended unless:

"(1) The offender is placed on probation with a minimum condition that he serve fifteen days in jail and participate in a court-approved substance abuse program and participate in a court-approved driver improvement program; or

"(2) The offender is placed on probation with a minimum condition that he perform thirty eight-hour days of court-approved community service activities and participate in a court-approved substance abuse program and participate in a court-approved driver improvement program."

**20.** The Court of Appeal's unpublished order states in part: "Applicant is not entitled to a trial by jury on the charge of DWI, second offense.... [W]e find no error in the ruling ... complained of."

**21.** The case was set for bench trial, but the trial court granted stays through disposition of Bairnsfather's appeal to the United States Supreme Court.

**22.** Bairnsfather listed the following "Questions Presented" in his Jurisdictional Statement:

"Is appellant Bairnsfather, someone charged as a second offender with operating a vehicle while intoxicated in violation of Louisiana Revised Statutes 14:98, required by the Sixth Amendment to the United States Constitution to be tried before a jury?

"If he and anyone so charged is required by the Sixth Amendment to the United States Constitution to be tried before a jury, then is Article 779B, Louisiana Code of Criminal Procedure, repugnant to the United States Constitution?"

**23.** Bairnsfather's Jurisdictional Statement argued that DWI was *"malum in se"* and that this, considered together with the punishments authorized by section 14:98 C and the "loss of" driver's license consequent on conviction, made it a "serious" rather than a "petty" offense so as to entitle him to a jury trial under the Sixth Amendment (and to render LSA–C.Cr.P. art. 779(B) unconstitutional because it denied a jury trial). He therein cited and relied on the same authorities as those principally relied on by the panel and Landry, including the following, *viz.:* *Colts; Clawans; Duncan; United States v. Craner*, 652 F.2d 23 (9th Cir.1981); *United States v. Woods*, 450 F.Supp. 1335 (D.Md.1978); *Rothweiler; Brady v. Blair*, 427 F.Supp. 5 (S.D.Ohio 1976); *Parham v. Municipal Court*, 86 S.D. 531, 199 N.W.2d 501 (1972); *State v. O'Brien*, 68 Haw. 39, 704 P.2d 883 (1985); and Annot., *Right to Trial by Jury in Criminal Prosecution for Driving While Intoxicated or Similar Offense*, 16 A.L.R.3d 1373 (1967 and Supp.1986).

*win.* We conclude that a resolution adverse to Bairnsfather of the substantive merits of his appeal cannot in any principled manner be reconciled with the result reached by the panel here. We likewise conclude that by dismissing the appeal for want of a substantial federal question, the Supreme Court in *Bairnsfather* did reach and so resolve the substantive merits of the appeal, and this seems particularly clear in light of Justice Stevens' jurisdictional dissent. *Bairnsfather* is thus a ruling on the merits with precedential value, albeit with less such value than an opinion of the Court after full briefing and argument. *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 2398, 60 L.Ed.2d 1017 (1979); *Tully v. Griffin, Inc.*, 429 U.S. 68, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976). Such dismissals are binding on the lower courts, which are not free in other cases to rule differently on the issues presented to and declared insubstantial by the Supreme Court. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975). This is at least so as to "the precise issues presented and necessarily decided by" the dismissals, though such rulings "should not be understood as breaking new ground." *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977).

Clearly there is nothing in *Bairnsfather* which is in tension with or breaks new ground respecting *Duncan, Frank, Baldwin,* or *Codispoti.*

Moreover, *Bairnsfather* plainly follows *Colts* and *Clawans*, the two pre-*Duncan* cases in which the Court indirectly considered the offense of DWI in relation to the right to a jury trial.

In *Colts*, the Court considered a charge of driving over the speed limit and recklessly so as to endanger others. The statute prohibited, in separate clauses, speeding, reckless driving, and driving so as to endanger persons or property. Although the maximum imprisonment was only thirty days, the Court held a jury was required. It stressed that the accused was "not charged merely with ... exceeding the ... limit of speed ... or merely driving reck-

lessly ... but with ... having driven at the forbidden rate of speed and recklessly, 'so as to endanger property and individuals.'" 51 S.Ct. at 53. Again, the Court made clear that the charge was not merely reckless driving, but rather driving *"so* recklessly 'as to endanger property and individuals.'" *Id.* (emphasis added). This, it was held, "was an indictable offense at common law" for which a jury was required. *Id. Colts* cited *State v. Rodgers* for the proposition that in petty offenses a jury was not required, and then went on to particularly rely on that case, stating:

> "The New Jersey Court of Errors and Appeals, in State v. Rodgers, supra, has discussed the distinction between traffic offenses of a petty character, subject to summary proceedings without indictment and trial by jury, and those of a serious character, amounting to public nuisances indictable at common law; and its examination of the subject makes clear that the offense now under review is of the latter character." 51 S.Ct. at 53.

It thus behooves us to see what *State v. Rodgers* had to say on the subject. There it was held that DWI, which carried a six-month maximum sentence, was not a public nuisance or otherwise an offense indictable at common law, and that accordingly there was no entitlement to trial by jury. Clearly *Colts* gave its approval to the holding of *State v. Rodgers* that DWI was, as *Colts* characterized it, one of those "traffic offenses of a petty character subject to summary proceedings without indictment and trial by jury." 51 S.Ct. at 53. Further, what the New Jersey Supreme Court in *State v. Rodgers* said of DWI is as true today of the Louisiana offense as it was in 1917 of the New Jersey offense, namely, "that it is not essential to the existence of the statutory offense that the driver ... be so intoxicated that he cannot safely drive," that it suffices that as a result of alcohol consumption the driver is under "an abnormal mental or physical condition ... which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess," and that conviction is possible "even though he drives so slowly and so skillfully and carefully that

the public is not annoyed or endangered." *State v. Rodgers*, 102 A. at 435.[24]

To refuse to accord significance to this distinction between DWI and driving recklessly so as to have actually endangered others is simply to disagree with *Colts* and

its approval of *Rodgers*. Moreover, as the Court recognized in *Duncan*, drawing the line between "petty" and "serious" offenses will necessarily involve "attaching different consequences to events which, when they lie near the line, actually differ very little." 88 S.Ct. at 1453.[25]

24. In Louisiana, DWI does not require proof or finding of reckless driving. *See State v. Redfearn*, 504 So.2d 1005 (La. App. 1st Cir.1987). Further, one can be guilty of DWI even though he did not realize that he was under the influence, and did not intend to be so. Moreover, where the prosecution is under clause (2) of section 14:98 A, proscribing driving with a blood alcohol content above .10 percent, it is not necessary to show that the accused's faculties were in *any way* diminished thereby. *See State v. Singer*, 457 So.2d 690 (La.App. 4th Cir.), *writ denied*, 458 So.2d 465 (La.1984). Most states have a similar "percentage" type DWI statute, *see* Annot., *Per Se Alcohol Offense Statutes*, 54 A.L.R. 4th 149 at 154 (1987), and such statutes have justly been characterized as imposing "a strict liability" or establishing "a *per se* violation," so that "[w]hen the State has proved the defendant was operating the vehicle and his blood alcohol concentrate was over 0.10%, there are no presumptions or inferences, and the statutory violations have been proved." *People v. Ziltz*, 98 Ill.2d 38, 74 Ill.Dec. 40, 42, 43, 455 N.E.2d 70, 72, 73 (1983). *See also Lester v. State*, 253 Ga. 235, 320 S.E.2d 142, 144–45 (1984) ("Impaired driving ability is not a 'fact necessary to constitute the crime'.... The elements of the crime ... are irrelevant to the ability of any individual to drive without impairment while having a blood-alcohol count of .12% or higher."); *Coxe v. State*, 281 A.2d 606, 607 (Del. 1971) (same).

Indeed, conventional DWI has been held not to be an offense of moral turpitude. *See Compton v. Jay*, 389 S.W.2d 639 (Tex.1965).

We observe that the first Louisiana DWI statute was enacted in 1922, and provided for a first offense sentence of a fine not exceeding five hundred dollars, "imprisonment in the parish jail for a term not exceeding six months, or both." Acts 1922, No. 132, § 2. In 1936, the 1922 Act, as amended, was repealed and a new DWI statute was enacted, under which the maximum penalty for DWI "without causing injury to person or property" was imprisonment in the parish or municipal jail for not less than thirty days nor more than four months, or a fine of not less than fifty dollars nor more than two hundred fifty dollars, or both. Acts 1936, No. 188, § 3. If there were injury to person or property, the confinement could be "with or without hard labor" and up to one year, and the fine up to one thousand dollars. *Id.* §§ 1 & 2. In 1942, the law was rewritten again, and the maximum penalty for first offense DWI was increased to a fine of no more than three hundred dollars, or imprisonment (without provision for hard la-

bor) for up to six months, or both. Acts 1942, No. 43, art. 98. In 1948, the sentence for a DWI first offense was made a fine of not less than one hundred twenty-five dollars nor more than four hundred dollars, or imprisonment in the parish jail for not less than thirty days nor more than eight months. Acts 1948, No. 331, § 1. The maximum confinement for first offense DWI apparently remained at eight months from 1948 to 1968 when it was reduced to six months. Acts 1968, No. 647, § 1. *See also Baldwin*, 90 S.Ct. at 1889 ("In response to the decision in *Duncan*, Louisiana has lowered the penalty for certain misdemeanors to six months, and has provided for a jury trial where the penalty still exceeds six months" (footnote omitted)). Since 1968, the maximum confinement for first and second offense DWI has not exceeded six months (without hard labor). For third offense DWI, however, imprisonment may be "with or without hard labor for not less than one year nor more than five years." § 14:98 D.

25. The panel observes that the loss of life, injury, and property damage on the nation's highways "present a devastating social problem in America today," asserting that nearly half the people in the nation will at some time be involved in an alcohol-related automobile accident and that there are "approximately two million" DWI arrests each year. 818 F.2d at 1176 & n. 3. We dispute neither the statistics nor the true gravity of the social problem, nor the implication therefrom that governmental response is highly appropriate. Nevertheless, this furnishes only the most attenuated support for the panel's ultimate holding. The *nature* of the governmental response to the problem—what part educational, rehabilitative, regulatory (*e.g.*, limiting liquor sales, driver's license restrictions, etc.) and other civil (*e.g.*, "dram shop" laws) and what part criminal, and the kind of criminal response (*e.g.*, criminalizing drinking at certain ages or driving with open alcohol containers in the vehicle; the character and the extent of the DWI penalty; grades of DWI offenses)—is a matter for legislative determination, especially for the legislatures of the several states (with congressional action available under the spending power; *see South Dakota v. Dole*, — U.S. —, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987)). Moreover, the problem is not necessarily the same in each state (the panel tells us nothing about Louisiana) and even if it were, this would not require each state to address it in the same fashion. There is more than one way to skin a cat. Further, it is surely wrong to conclude—as the panel inferentially does—that the greater the

After *Colts*, the Supreme Court next indirectly considered DWI in *Clawans*. There, (then) Justice Stone's opinion for the Court, in upholding nonjury conviction for an offense punishable by three months' imprisonment, relied on the fact that:

"A number of states have continued in force statutes providing for trial, without a jury, of violations of municipal ordinances, and sundry statutory offenses, punishable by commitment for three months or more." 57 S.Ct. at 663 (footnote omitted).

The first specific offense statute (as opposed to statutes embracing violations of municipal ordinances generally) cited by Justice Stone in support of the above-quoted statement is:

"N.J. Comp. Laws (1924 Supp.), §§ 135–63(3), 135–76 (operating motor vehicle under influence of liquor; six months; see Klinges v. Court of Common Pleas, 130 A. 601, 3 N.J.Misc. 1084, 4 N.J. Misc. 7)." 57 S.Ct. at 663 n. 6.

The cited *Klinges* case holds that the New Jersey DWI statute, which authorizes confinement of up to six months, is not unconstitutional because a jury trial is not authorized. 3 N.J.Misc. 1084, 4 N.J.Misc. 7, 130 A. 601 at 602 (1925).[26] In the *Clawans* text, Justice Stone continued by stating, "Convictions under such legislation have been upheld many times in the state courts, despite objections to the denial of a jury trial." 57 S.Ct. at 664 (footnote omitted). Among the cases cited by Justice Stone in support of this statement is *State v. Parker*, 87 Fla. 181, 100 So. 260 (1924), a DWI prosecution. *See* 57 S.Ct. at 664 n. 7. Surely, then, *Clawans* is another example of the Supreme Court's recognition that DWI

may constitutionally be prosecuted without a jury where the maximum penalty does not exceed that applicable to petty offenses generally. The Nebraska Supreme Court, among others, has read *Clawans* as categorizing DWI as a petty offense. *State v. Amick*, 173 Neb. 770, 114 N.W.2d 893, 895 (1962). *See also City of Albuquerque v. Arias*, 64 N.M. 337, 328 P.2d 593, 594 (1958) (same).

■ Accordingly, *Colts* and *Clawans* plainly indicate that the Supreme Court regards DWI as properly a petty offense where the maximum confinement authorized does not exceed six months. Taken together with *Bairnsfather*, these cases, the only ones in which the Supreme Court has addressed the matter, should be decisive of the issue.

Certainly, there is no convincing body of lower federal court decisions to the contrary. The panel relied heavily on *United States v. Craner*, 652 F.2d 23 (9th Cir. 1981), which held that DWI in a national park, for which the maximum penalty was a five hundred dollars fine and six months' imprisonment, was not a "petty" offense. However, the relevance of *Craner* is undermined by the fact that there the majority in part expressly relied on the fact that the Secretary of the Interior, who set the maximum penalty, fixed it at the highest level authorized. The *Craner* majority observed, "We cannot hazard that the Secretary's indiscriminate authorization of this penalty for varied offenses, or Congress's general limitation on the sentence the Secretary may authorize, represents a considered legislative judgment of the gravity of the offense of DUI." *Id.* at 25. Judge

---

number of people who commit a particular offense the more "serious" is that offense for purposes of the "petty" offense doctrine. On such reasoning, speeding would be a more serious offense than murder for this purpose. Moreover, the greater the number of offenses the greater the need for expedition in their resolution. Indeed, speeding is also a most grave social problem in the nation, and there is strong evidence that the fifty-five miles an hour speed limit saved many thousands of lives each year. Cigarette smoking, which is so addictive and responsible for so much death and disability, is likewise a grave social problem. But these

social realities do not lead us to conclude that on a criminal charge of speeding by driving eighty miles an hour on the highway, or of selling cigarettes to a minor, there is a Sixth Amendment right to a jury trial where the maximum possible sentence is clearly "petty."

**26.** New Jersey apparently still follows this rule. *See, e.g., State v. Roth*, 154 N.J.Super. 363, 381 A.2d 406, 408 (1977); *State v. Linnehan*, 197 N.J.Super. 41, 484 A.2d 34 (1984), *cert. denied*, 99 N.J. 236, 491 A.2d 723 (1985).

Sneed, in his *Craner* special concurrence, would have relied exclusively on this ground; absent that special factor, he was "inclined to treat the DUI offense as 'petty.'" *Id.* at 28. Here, by contrast, the maximum penalty fixed by the Louisiana Legislature *does*, of course, represent its "considered legislative judgment of the gravity of the offense." *United States v. Woods*, 450 F.Supp. 1335 (D.Md.1978), also relied on by the panel, is, like *Craner*, a DWI in violation of a national park regulation, and thus is distinguishable for the same reasons. 450 F.Supp. at 1345.[27] To the extent that *Craner* and *Woods* are not so limited, we respectfully disagree.

On the other hand, in *United States v. Jenkins*, 780 F.2d 472 (4th Cir.), *cert. denied*, 476 U.S. 1161, 106 S.Ct. 2283, 90 L.Ed.2d 724 (1986); *United States v. Fletcher*, 505 F.Supp. 1053 (W.D.Va.1981); and *Matos v. Rodriguez*, 440 F.Supp. 673 (D.P.R.1976), it was held that a DWI prosecution did not give rise to Sixth Amendment jury entitlement where the maximum penalty, though including imprisonment, did not exceed the *Baldwin* threshold.[28] The same holding was also made by the district courts in *Craner*, *Jenkins*, and in the present case.

We are unable to conclude that the lower federal courts have developed any clear concensus which is contrary to the plain implication of *Bairnsfather*, *Clawans*, and *Colts* that DWI is a "petty" offense for Sixth Amendment purposes unless its maximum authorized sentence exceeds the *Baldwin* line.

### IV.

For its holding, the panel relied in large part on its perception of the adverse collateral consequences of a DWI conviction, "particularly the suspension of driving privileges" which it held "constitutes a significant collateral consequence, and therefore a trial by jury is necessitated." 818 F.2d at 1177. The panel also noted "serious economic repercussions, such as increase in insurance premiums" and "public opprobrium." *Id.* We disagree.

■ So far as concerns the potential effects of conviction, the Supreme Court's emphasis has been on the maximum *sentence* imposable and particularly on the maximum possible *confinement*. This was the case in *Clawans* (see, *e.g.*, note 14, *supra*, and accompanying text) and increasingly thereafter. In both *Duncan*'s and *Baldwin*'s discussions of current and late eighteenth century practice in the states, the only reference made is to the length of possible confinement. *Duncan*, 88 S.Ct. at

---

**27.** Additionally, the *Woods* court relied on the law of Maryland, the state of defendant's residence and apparently that in which the park was located, which provided penalties of up to one year's confinement for first offense DWI, and for prosecution of which *Baldwin* would have required a jury. 450 F.Supp. at 1345. No such special circumstances are applicable here. *Brady v. Blair*, 427 F.Supp. 5 (S.D.Ohio 1976), does support the panel, but we elect not to follow it.

**28.** The panel viewed *Jenkins* (a prosecution under the Assimilative Crimes Act, 18 U.S.C. § 13) as inapposite because there the maximum penalty was thirty days' imprisonment and a two hundred dollars fine. *Landry* at 1177 n. 3. While this view finds some support in the *Jenkins* opinion (*see* 780 F.2d at 745), we are not persuaded, for it seems to us that if the maximum sentence is determinative, then the *Baldwin* line controls; if the "intrinsic" nature of the offense controls, then the shortness of the possible confinement does not remove the right to

trial by jury. *See Colts* (maximum sentence one hundred dollars fine and thirty days' imprisonment; "indictable offense at common law"). Moreover, to attempt to add the length of the maximum authorized sentence to other supposed indicia of seriousness in order to arrive at a point on the "petty-serious" measuring stick is far too close to attempting to add apples and oranges. Apart from the maximum possible sentence (or the sentence imposed, in case of contempts lacking any legislatively fixed maximum), and the laying aside indictability of the charged conduct at common law (because this by itself renders the offense serious under *Colts* and *Callan*), other supposed indicia of seriousness are not quantifiable, and hence cannot be meaningfully aggregated to each other or to the length of the maximum sentence. It is simply impossible to say that so much public disapproval (which, of course, cannot really be quantified) is the same as, say, two months' potential confinement, so that the offense must be tried by a jury if the maximum sentence is five months' confinement but not if it is only four.

1454; *Baldwin,* 90 S.Ct. at 1889–90.[29] And, as we have noted, *Argersinger,* 92 S.Ct. at 2008, and *Codispoti,* 94 S.Ct. at 2691, speak of the dividing line between serious and petty offenses as being fixed by the length of maximum potential confinement.[30] Moreover, *Baldwin* observed:

"Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in *quite serious repercussions* affecting *his career and* his *reputation.* Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications." *Id.* 90 S.Ct. at 2191 (emphasis added).

■ As *Baldwin* justly notes, anyone sentenced to six months' imprisonment is likely to have his "reputation" and "ca-

reer" suffer "quite serious" adverse repercussions. This, it seems to us, refers to, and holds nondeterminative for offenses with a maximum sentence not exceeding six months' confinement, the same considerations as those the panel characterized as "serious economic repercussions" and "public opprobrium." We know of no basis or standard by which *we* can say that such repercussions and opprobrium resulting from a DWI conviction are as a matter of law different *in kind* from those resulting from confinement for conviction of numerous other concededly petty offenses, such as public drunkenness. As for increased insurance premiums, these can as easily result from a couple of speeding tickets, or from a fender-bender or two never criminally prosecuted.

Nor does the maximum sixty-day driver's license suspension provided for by LSA–R.S. § 32:414 A(1) alter the result.[31]

**29.** *Baldwin* does here contain one passing reference to the fine, as well as imprisonment, for a current New Jersey offense.

**30.** We recognize that *Duncan,* 88 S.Ct. at 1453–54, and *Baldwin,* 90 S.Ct. at 1889, each refers to the petty offense definition of 18 U.S.C. § 1 which was then based on a maximum sentence of six months and a five hundred dollars fine. However, in *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), the Court held that a ten thousand dollars contempt fine could constitutionally be imposed on a local labor union without a jury trial. The Court noted that "imprisonment and fines are intrinsically different" and that:

"It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated."

Thereafter, 18 U.S.C. § 1(3) was amended to increase the maximum fine amount in the petty offense definition to five thousand dollars for an individual and ten thousand dollars for others. *See* note 16, *supra.*

We do not consider that the fifty dollars special costs provisions of LSA–C.Cr.P. arts. 887(C) and (D) (that under clause (C) being inapplicable to appellant in any event), *see* note 3, *supra,* the more conventional court costs, and the fifty dollars fee required in order to reinstate the suspended driver's license, LSA–R.S. § 32:667 G, when added to the maximum authorized fine of five hundred dollars, render the offense "serious" on the theory that the maximum fine thus

exceeds five hundred dollars. It seems evident that the license reinstatement fee and conventional court costs are not properly regarded as part of the punishment, and Louisiana has likewise so held respecting the costs under articles 887(C) and (D). *State v. Henderson,* 491 So.2d 647 (La.1986). Further, nonpayment of such items cannot result in the accused's being imprisoned for a period of more than six months (including any confinement directly imposed). LSA–C.Cr.P art. 884; *State v. Thigpen,* 275 So. 2d 760 (La.1973). Nor generally can nonpayment result in *any* imprisonment where it is *bona fide* merely the result of financial inability. *See Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). We are inclined to view the maximum fine as being five hundred dollars. Even if it were one thousand dollars, however, this would not change the result. As noted, the focus is on the confinement, not the fine; further, *Muniz* sustained a ten thousand dollars fine, and Congress then found five thousand dollars appropriate for petty offenses by individuals. Viewed historically, it is evident that, because of inflation, one thousand dollars today (or in 1984) is worth substantially less than five hundred dollars was both when Congress first used that figure in 18 U.S.C. § 1 (which was at least as early as 1948) and when *Baldwin* was decided in 1970.

**31.** The Department of Public Safety is required to suspend the license for such period on conviction of first offense DWI. *Id.* However, the Department may modify the suspension so as to grant restricted driving privileges in case suspension "will deprive him [the licensee] or his

It seems wholly incongruous to hold that possible license suspension tips the scale to jury trial entitlement, when we have long-recognized "that a defendant need not be informed, before pleading guilty to a charge of driving while intoxicated, that as a collateral consequence of his conviction, his driver's license will be suspended." *Moore v. Hinton*, 513 F.2d 781, 782–83 (5th Cir.1975). Indeed, several courts have held that license suspension does not suffice to take DWI out of the "petty" offense category. *See, e.g., Jenkins*, 780 F.2d at 474 (six-month automatic suspension); *Fletcher*, 505 F.Supp. at 1054; *Amick*, 114 N.W. 2d at 895; *State v. Morrill*, 123 N.H. 707, 465 A.2d 882, 886 (1983) (sixty-day to two-year suspension). Further, license suspension is often incident to multiple minor moving traffic violations.

Certainly, the Louisiana sixty-day maximum suspension for first offense DWI cannot suffice to render it a "serious" offense. Under LSA–R.S. § 32:414 A(1), the suspension period commences to run upon notification of conviction or guilty plea. It hence cannot be said to increase the *maximum* potential hardship beyond that resulting from six months' imprisonment, as one who is imprisoned for six months suffers nothing more by virtue of the fact that his license was suspended during the first two months of his confinement, as throughout that time he is by virtue of his imprisonment in any event unable to drive. And it is, of course, the maximum potential sentence which is looked to for these purposes, rather than the sentence actually imposed. *See, e.g., Duncan*, 88 S.Ct. at 1453. Further, license suspension can be said to make the penalty *actually* imposed more onerous than it otherwise would be *only* to the extent that the defendant serves *less* than sixty days in prison. It is obvious that a sentence with no confinement and license suspension for the next sixty days is *less* severe than one under which the defendant serves those same sixty days in prison though his license is unsuspended. Or, to take another example, a sentence under which the defendant serves twenty

days in jail and is also unable to drive for the next succeeding forty days because his license is suspended is obviously *less* severe than one under which the defendant serves all those same sixty days in jail (during which he is for that reason unable to drive) though suffering no license suspension. These commonsense observations are reinforced by the Supreme Court's opinion in *Frank*. There, three years' probation, though a significant infringement of freedom, was deemed not sufficiently onerous to make an otherwise "petty" offense serious. As *Frank* stated (89 S.Ct. at 1506–07 & n. 6):

"Probation is, of course, a significant infringement of personal freedom, but it is certainly less onerous a restraint than jail itself.[6] In noncontempt cases, Congress has not viewed the possibility of five years' probation as onerous enough to make an otherwise petty offense 'serious.'

"————

"[6.] Petitioner is required to make monthly reports to his probation officer, associate only with law-abiding persons, maintain reasonable hours, work regularly, report all job changes to his probation officer, and not leave the probation district without the permission of his probation officer."

These same considerations likewise demonstrate that the probationary conditions provided for by section 14:98 B, *see* note 2, *supra*, which only come into play if the sentence is suspended, do not suffice to render this otherwise "petty" offense a "serious" one.

### V.

Finally, the panel, citing, *inter alia, Jenkins*, 780 F.2d at 474 n. 4, and Annot., *Right to Trial by Jury in Criminal Prosecution for Driving While Intoxicated or Similar Offense*, 16 A.L.R.3d 1373 (1967 and Supp.1986), considered that in some twenty-four states a defendant charged with DWI was entitled to a jury trial, and "a study of the authorities indicates that only six states deny defendants the right to a trial by jury on DWI charges." 818 F.2d at 1174 n. 2.

family of the necessities of life, or will prevent him from earning a livelihood." *Id.*

We are not persuaded that the majority state practice in this respect sets the constitutionally required minimum for all states. While in *Baldwin* the Court was influenced by the fact that "[i]n the entire Nation, New York City alone denies an accused the right to interpose between himself and a possible prison term of over six months, the commonsense judgment of his peers," *id.* 90 S.Ct. at 1889–90 (footnote omitted), the practice in six states surely cannot be regarded as comparable to that of but a single city. We observe that more recently the Court has refused to condemn a practice as unconstitutional notwithstanding that it had been rejected by forty-eight states and was followed only by two. *Martin v. Ohio*, — U.S. —, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987).

While, as noted, we do not consider the general state practice to be determinative, nevertheless, since the panel has addressed the matter, we deem it appropriate in the interests of completeness to likewise do so. The panel's conclusion that most states regard DWI as a "serious" rather than a "petty" offense is implicitly based on the circumstances that in the majority of states a DWI defendant has a right to jury trial. However, this fails to take into account the fact that most states do not follow the "petty offense" doctrine *at all* (or do so *only* for offenses as to which *no* confinement is authorized). Basing our analysis on the United States' amicus brief filed before us en banc, the figures and relevant citations in which have not been challenged, there appear to be thirty states in this category.[32] The fact that a defendant is entitled to a jury trial for DWI in these states thus tells us *nothing* about how "serious" or "petty" that offense is regarded, because *all* offenses (or all traffic offenses or all offenses where any confinement is authorized) entitle the accused to a jury. Hence, as to these thirty states, the "seriousness" or "pettiness" of DWI can be measured *only* by the maximum sentence authorized, which is, of course, what the Supreme Court has repeatedly told us is either the most relevant or the only relevant way to make that determination. Of these thirty states, in nineteen the maximum authorized confinement for first offense DWI does not exceed six months.[33] These nineteen states must hence be counted as states which regard DWI as a "petty" offense. The remaining eleven of these thirty states which do not recognize the "petty offense" doctrine have maximum penalties for first offense DWI which exceed the *Baldwin* six months' level. These eleven states hence may be counted as ones in which DWI is regarded as a "serious" offense.[34] Thus, so far we may count nineteen states regarding DWI as "petty" and eleven regarding it as "serious."

Of the remaining twenty-two jurisdictions (twenty states, the District of Columbia, and Puerto Rico[35]) which have not rejected the "petty offense" doctrine (or have not rejected it for all traffic offenses or restricted it to offenses for which incarceration is not authorized), eleven entitle the accused to a jury trial.[36] The other

32. This brief also includes an addendum purporting to cite and summarize relevant statutory and constitutional provisions and judicial decisions of all fifty states and the District of Columbia with respect to the maximum fine and imprisonment for first offense DWI and entitlement to jury trial therefor.

33. The brief of the United States lists these nineteen states as California, Florida, Idaho, Kansas, Kentucky, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, North Carolina, Ohio, Oregon, South Carolina, Utah, West Virginia, Wisconsin, and Wyoming.

34. These eleven states are listed in the brief of the United States as Alaska, Colorado, Illinois, Indiana, Iowa, Maine, Oklahoma, Tennessee, Texas, Vermont, and Washington.

35. The brief of the United States does not include Puerto Rico. We have included it as a jurisdiction which recognizes the "petty offense" doctrine and considers first offense DWI to be "petty" for this purpose on the basis of *Matos v. Rodriguez*, 440 F.Supp. 673 (D.P.R.1976).

36. These eleven states are shown in the United States' brief as being Alabama, Arizona, Arkansas, Georgia, Hawaii, Maryland, Massachusetts, New York, Rhode Island, South Dakota, and Virginia.

Of such eleven states, it appears that only four require a jury trial because they view DWI as "intrinsically" serious regardless of the authorized penalty: Arizona (*Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966)); Hawaii (*State v. O'Brien*, 68 Haw. 39, 704 P.2d 883

eleven jurisdictions in this group, though following the "petty offense" doctrine, all provide maximum penalties for first offense DWI which do *not* exceed six months' confinement (or their own, lower *Baldwin* threshold); none of these has by statute or judicial decision held that first offense DWI entitles the accused to a jury; and six have reported judicial opinions to the effect that there is no such entitlement.[37] Thus, of the twenty-two jurisdictions which do not reject the "petty offense" doctrine, eleven may be counted as viewing DWI as serious (either by the penalty exceeding that for petty offenses or "intrinsically") and eleven as viewing it as "petty."

Thus, of fifty-two jurisdictions, thirty-two (those referenced in notes 33 and 37, *supra,* plus Arizona and Hawaii, as referenced in note 36, *supra*) have penalties for DWI which do *not* exceed the *Baldwin* threshold, and thirty of these thirty-two jurisdictions (all except Arizona and Hawaii, which hold DWI "serious" despite its "petty" penalty, *see* note 36, *supra* ) may hence properly be counted as jurisdictions which regard DWI as a "petty" offense under the standard set by the United States Supreme Court.[38] The remaining twenty-two jurisdictions (twenty with over *Baldwin* level penalties, *see* notes 34 and 36, *supra,* plus Arizona and Hawaii) can be counted as regarding DWI as "serious" rather than "petty." The thirty-to-twenty-two result reflects that a clear majority of the jurisdictions (with room for the possibility that a few states may have been misallocated) classifies DWI in a manner which entirely meets the standards of the Supreme Court's definition of "petty." Louisiana has not fixed an aberrationally low maximum penalty for an offense generally regarded as deserving of a higher maximum.[39]

(1985)); Maryland (*Fisher v. State,* 305 Md. 357, 504 A.2d 626 (1986)); and South Dakota (*Parham v. Municipal Court,* 86 S.D. 531, 199 N.W.2d 501 (1972)) (in Maryland and South Dakota, however, the authorized penalty includes confinement in excess of six months, so *Baldwin* would dictate the same result in any event). Of the remaining seven states out of these eleven which broadly recognize the "petty offense" doctrine but nevertheless grant a jury trial for first offense DWI, the reason for jury trial entitlement appears simply to be that the maximum authorized punishment for the offense includes confinement in excess of six months and *Baldwin* (or the comparable state doctrine) thus requires a jury.

**37.** These eleven jurisdictions are shown in the United States' brief as being Connecticut, Delaware, the District of Columbia, Louisiana, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Pennsylvania, and Puerto Rico (which latter we have added).

Of these eleven jurisdictions, there are reported judicial opinions in six to the effect that the accused is not entitled to a jury in a first offense DWI prosecution. *See State v. Thigpen,* 275 So.2d 760 (La.1973); *State v. Hayden,* 437 So.2d 294, (La.App. 1st Cir.1983); *State v. Smith,* 99 Nev. 806, 672 P.2d 631 (1983); *State v. Morrill,* 123 N.H. 707, 465 A.2d 882 (1983) (holding, however, that maximum fine would be reduced to five hundred dollars); *State v. Rodgers,* 91 N.J.L. 212, 102 A. 433 (1917); *Klinges v. Court of Common Pleas,* 3 N.J.Misc. 1084, 4 N.J.Misc. 7, 130 A. 601 (1925); *State v. Roth,* 154 N.J.Super. 363, 381 A.2d 406 (1977); *State v. Linnehan,* 197 N.J.Super. 41, 484 A.2d 34 (1984), *cert. denied,*

99 N.J. 236, 491 A.2d 723 (1985); *City of Albuquerque v. Arias,* 64 N.M. 337, 328 P.2d 593 (1958); *Hamilton v. Walker,* 65 N.M. 470, 340 P.2d 407 (1959); *State v. Sweat,* 78 N.M. 512, 433 P.2d 229 (App.1967); *Matos v. Rodriguez,* 440 F.Supp. 673 (D.P.R.1976).

**38.** That many of these disagree with the "petty offense" doctrine and consider that the accused should be entitled to a jury in *all* criminal prosecutions (or all where any incarceration is possible) is, of course, irrelevant (and tells us nothing of how they view DWI). Were it otherwise, we would necessarily conflict with *Clawans,* though, of course, the states are free—by their own constitutions and statutes—to reject the "petty" offense exception to jury-trial entitlement.

**39.** If we count jurisdictions in which reported judicial opinions may be said to have passed on whether DWI is the character of offense that requires a jury trial apart from the maximum penalty provided, we can see that four jurisdictions have stated that it is, namely, Arizona, Hawaii, Maryland, and South Dakota (*see* cases cited in note 36, *supra* ), while eight have held that it is not. The eight are composed of Louisiana, Nevada, New Hampshire, New Jersey, New Mexico, and Puerto Rico (*see* cases cited in note 37, *supra*), plus Nebraska (*State v. Amick,* 173 Neb. 770, 114 N.W.2d 893, 895–96 (1962)), and Florida (*State v. Parker,* 87 Fla. 181, 100 So. 260 (1924); *City of Gainesville v. Hilliard,* 207 So.2d 520 (Fla.App.), *approved,* 213 So.2d 689 (Fla. 1968), *appeal dism'd for want of a substantial federal question,* 393 U.S. 321, 89 S.Ct. 556, 21

## Conclusion

We do not minimize the gravity of the social problem presented by excessive drinking and dangerous driving. However, DWI was never an indictable offense at common law, and neither the elements of the crime nor its potential first offense penalty under Louisiana law are such that the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, requires Louisiana to afford one accused thereof the right to trial by jury. The district court therefore correctly denied appellant's petition for habeas corpus, and its judgment is accordingly

AFFIRMED.

GARZA, Circuit Judge, with whom JERRE S. WILLIAMS, Circuit Judge, joins dissenting:

I respectfully dissent.

Since I have no apologies for the original panel opinion which I authored in this case and not wanting to burden the law books, I hereby adopt the original panel opinion, 818 F.2d 1169, *in toto* as my dissent.

However, I want to make some additional comments. I am amused by the conclusion in the majority opinion that DWI was never an indictable offense at common law. The reason it was not indictable at common law is because the offense did not exist at common law. Although the closest thing to it was driving a horse-drawn carriage recklessly, the Supreme Court even considered it a serious offense to drive an automobile recklessly through the public streets, and thus a jury trial was mandated, even though the maximum penalty was 30 days in jail and a fine of $100.00. *District of Columbia v. Colts*, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930).

Further, I do not intend to engage in a battle of statistics with the majority as to how many states provide for a jury trial under these facts. The statistics that I referred to in my original opinion came from the sources that I cited. My belief

that driving while intoxicated is a serious offense, *malum in se*, and one which should be viewed as an indictable offense at common law, would still be my belief irrespective of whether one state or fifty states provided for a jury trial.

The majority in a somewhat apologetic manner states that it does not "minimize the gravity of the social problem presented by excessive drinking and dangerous driving." On the other hand I see it as a grave problem now. Some of my colleagues have argued with me that if a person commits a more serious crime while driving while intoxicated, then he will be charged with a more serious offense and a jury trial right would attach. My response is thank God many people are apprehended while driving while intoxicated, before they kill or maim someone. It makes little sense to me to say that Louisiana need not provide a jury trial for a DWI defendant unless more serious consequences flow from the act of driving a vehicle without full control of one's faculties.

The seriousness of the problem as I conceive it lies in the fact that in many state jurisdictions, DWI cases are handled as if in a mass production line where the offender pleads guilty and the state administers a slap on the wrist as a penalty. If driving while intoxicated was properly considered a *malum in se* offense, then the state could demand a trial by jury as a serious offense, which it is, and it would go a long way towards solving the present problem. Those persons accused of driving while intoxicated would soon learn that their conduct was reprehensible after being indicted by a grand jury and being subject to a trial by their peers if the state demands it. We have to treat this serious offense as we treat other serious crimes. An offender who believes that he was unlawfully charged with driving while intoxicated would have the protection of having to be indicted by a grand jury and having his case tried by a jury of his peers if indicted.

L.Ed.2d 517 (1969); *Whirley v. State*, 450 So.2d 836 (Fla.1984) (Fla.Stat. § 316.1934(4) extends the right to jury trial to all traffic cases; a Nebraska statute gives the right to jury trial for

all misdemeanors, *State v. Karel*, 204 Neb. 573, 284 N.W.2d 12, 13–14 (1979)). On this basis, there is a two-to-one majority (eight-to-four) for DWI not being "intrinsically" serious.

The states could provide that in the penalty phase of a DWI prosecution a jury would set the punishment if the state so demanded, so as to avoid leniency in sentencing by certain judges.

I cannot perceive the members of our Supreme Court not declaring driving while intoxicated to be a serious offense. If it is a serious offense, it would have been indictable at common law and it should be seen as an indictable offense now, and as such it would be removed from the petty offense category regardless of the penalties provided for by the states.

I would therefore reverse the court below and hold that a jury trial is mandated in driving while intoxicated cases.